# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:12-cv-000229-MR

KENNETH BURKE and LILIANA MICOLI,

      Plaintiffs,

vs.

BANK OF AMERICA, N.A., and RONALD BERG,

      Defendants.

**O R D E R**

**THIS MATTER** is before the Court on Defendant Ronald Berg's Motion to Dismiss Pursuant to Rule 12(b)(6) or in the Alternative that Plaintiff Substitute the Real Party in Interest Pursuant to Rule 17 [Doc. 19].

## I. PROCEDURAL BACKGROUND

On December 8, 2011, the Plaintiffs, along with a number of other litigants, filed a lawsuit in this Court styled Carter v. Bank of America, Civil Case No. 1:11-cv-00326 (W.D.N.C.). On June 11, 2011, the Court entered an order in the Carter case severing the claims of the other plaintiffs from the claims of Gregory Carter. [Civil Case No. 1:11-cv-00326, Doc. 32].

Among the claims severed were the claims of the Plaintiffs Kenneth Burke ("Burke") and Liliana Micoli ("Micoli").

Plaintiffs Burke and Micoli filed their Complaint on August 10, 2012, against Bank of America, N.A., Andrea Dickens, and Ronald Berg, asserting claims for violations of the Interstate Land Sales Act, 15 U.S.C. § 1703(a)(2) ("ILSA"), violations of the North Carolina Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"), negligent misrepresentation, and fraud, arising from the Defendants' alleged involvement in a scheme to sell lots in Grey Rock at artificially inflated prices. [Doc. 1]. Defendant Berg now moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 19].

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required." <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters, 684 F.3d at 439.

To survive a Rule 12(b)(6) motion, "a complaint must state a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 678). Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has recently explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III.   FACTUAL BACKGROUND

Taking the well-pled factual allegations[1] of the Plaintiffs' Complaint as true, the following is a summary of the relevant facts.

The Plaintiff Kenneth Burke bought an undeveloped lot ("Lot 111") in the Grey Rock subdivision in Lake Lure, North Carolina and financed the purchase of the lot through Bank of America ("the Bank"). [Complaint, Doc. 1 at ¶42; Deed, Doc. 19-2].[2] The developers of Grey Rock were LR Buffalo Creek, LLC ("LR Buffalo Creek") and its parent company, Land Resource, LLC ("Land Resource"). [Id. at ¶1].

---

[1] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the Amended Complaint, see Aziz, 658 F.3d at 391, as well as "[t]he mere recital of elements of a cause of action," see Walters, 684 F.3d at 439.

[2] While the Complaint alleges that Kenneth Burke and Liliana Micoli purchased the subject property, the deed memorializing this transaction, which is attached to the Defendant's Motion to Dismiss, identifies Burke as the sole grantee. [Deed, Doc. 19-2]. The Court may properly consider this deed as it is integral to and explicitly relied on in the pleadings. American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

Plaintiff Burke met Defendant Berg after joining an investment club in New York City called "New York City Cash Flow." [Id. at ¶43]. Berg, who was looking for partners to purchase lots in Grey Rock at Lake Lure, told Burke that he had a great relationship with Land Resource and that he had worked with Land Resource and the Bank to quickly close on the purchase of lots in Grey Rock. [Id.]. He also stated that he was in a position to influence the appraisers and that the loan officers were working closely with him because they all wanted the same thing, which was to close deals quickly in Grey Rock. [Id.].

Defendant Berg told Burke that Bank of America was his primary source to get loans for the purchase of lots in Grey Rock, but that he had contacts at other banks, so if one bank didn't play ball, they could go to another bank for a loan to purchase a lot in Grey Rock. [Id. at ¶44]. Burke later learned that Defendant Berg financed approximately 40 sales through Bank of America, many of them short-term "flips." [Id.].

Defendant Berg told Plaintiff Burke that he had purchased too many properties in his own name and that financial institutions would not lend him any more money for lot purchases, so they would have to put the loan in Burke's name. [Id. at ¶46]. Defendant Berg assured Plaintiff Burke that he could receive an interest-only loan in his name for the purchase of Lot 111

and encouraged him to go through the Bank and speak with the Bank's loan officer Andrea Dickens. [Id. at ¶47].

When Plaintiff Burke contacted Dickens, she confirmed that she had a business relationship with Defendant Berg and that she had obtained mortgages for him, and with him, many times. [Id. at ¶48]. She told Plaintiff Burke that he would not have a problem obtaining a mortgage because he had an excellent credit rating and because he was "a Ron Berg referral." [Id.]. Dickens also told Plaintiff Burke that there would be no problem for him to obtain a loan to purchase Lot 111 with no documents or any other proof of financial resources. [Id. at ¶50].

Prior to Plaintiff Burke obtaining financing, Defendant Berg told Plaintiff Burke what the appraised value of Lot 111 would be. [Id. at ¶49]. When Plaintiff Burke asked Defendant Berg how he knew how much the lot would appraise for ahead of time, Defendant Berg said "it was a given" that all his lot sales appraised and if the Bank did not deliver good appraisals he would seek another bank to work with and they would lose business. [Id.].

In the summer of 2006, Defendant Berg stated to Plaintiff Burke that Grey Rock was a "luxury gated mountain community" and that Home and Garden Television ("HGTV") had built a dream home at the Grey Rock property. [Id. at ¶51]. He told Plaintiff Burke that Grey Rock would have

lots of amenities including horse stables, golf, tennis, boating, and water sports. [Id.]. Further, he stated that Lot 111 would be very easy to sell at a profit because of these amenities and because he had "a relationship" with the developer. [Id.]. He also stated that Plaintiff Burke was purchasing Lot 111 at the ground level at a deep wholesale discount from the developer. [Id.]

Defendant Berg further stated to Plaintiff Burke that the roads were bonded, that the bonds would ensure their completion, that there would be no problem with electrical services lines being provided to the area, and that both water service and wastewater disposal would not be issues at this property. [Id. at ¶ 52]. Berg showed Plaintiff Burke the drawings/sketches of the amenities at Grey Rock at a presentation at Defendant Berg's home before Plaintiff Burke purchased the lot. [Id. at ¶53].

Defendant Berg represented to Plaintiff Burke that he would be the original purchaser of Lot 111 from Land Resource. [Id. at ¶54]. Plaintiff Burke subsequently learned that he purchased Lot 111 from Defendant Berg, individually and as Trustee of an irrevocable discretionary spendthrift trust dated August 13, 2005 called the 111 Greyrock Trust, for approximately $123,000 more than Berg and the Trust had purchased it from Land Resource ten months earlier. [Id.].

Plaintiff Burke told Defendant Berg that he could not hold the loan on Lot 111 for very long and that he would not be able to hold it after the Option/ARM kicked in. [Id. at ¶ 55]. Defendant Berg responded by stating he would only have to hold the mortgage for one to two years and that Lot 111 would be sold at a profit within two years. [Id.]. Defendant Berg also assured Plaintiff Burke that he would handle the resale of Lot 111 personally. [Id. at ¶57]. Defendant Berg stated that the profit would be substantial because the amenities would be in place by then, thereby increasing the value of the property. [Id.]. He also said that he had many contacts, a large network of advertising and marketing resources, and that he would have no problem reselling the lot. [Id.]. When Plaintiff Burke expressed concern that the price of Lot 111 was too high, Defendant Berg responded that the price for Lot 111 was a discounted ground level price. [Id.]. Defendant Berg provided Plaintiff Berg with a work sheet that itemized each "discount" that he was receiving on the purchase of Lot 111. [Id. at ¶56].

Plaintiff Burke invested with Defendant Berg in Lot 111 with his role being that he would hold the mortgage on Lot 111 in his name and use his credit score to facilitate obtaining the loan from the Bank. [Id. at ¶58]. The plan was for Defendant Berg and Plaintiff Burke to contribute equally to all

expenses related to Lot 111 and to split the profits equally. [Id.]. Plaintiff Burke entered into an Irrevocable Discretionary Spendthrift Trust ("111A Greyrock Trust") with Defendant Berg with Berg acting as the Trustee. [Id.]. A general warranty deed was recorded on October 26, 2006, transferring Lot 111 from the Plaintiffs to Ronald Berg, individually and as trustee of the 111A Greyrock Trust. [Doc. 19-3]. Defendant Berg has not paid his share of the expenses and Plaintiff Burke has been paying the mortgage on the property since July of 2008. [Id.]. Plaintiff Burke have asked Defendant Berg to vitiate the trust and render it null and void, but Defendant Berg has refused to do so and stated that he would only take such action for a payment of $30,000. [Id.].

## IV. ANALYSIS

### A. Whether Plaintiffs' Claims are Barred as Untimely Filed

Defendant Berg first argues that the Plaintiffs' claims are barred because they were not timely re-filed after they were severed from the original Carter action.

In the Order directing severance, the Court allowed the Plaintiffs "thirty (30) days from entry of this Order to pay the requisite filing fee. Upon payment of this fee, the Court will allow each Plaintiff to file a separate complaint asserting claims based upon the particular lot

purchased or refinanced by that particular Plaintiff." [Civil Case No. 1:11-cv-00326, Doc. 32 at 6]. The thirty-day time period, computed as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure, was set to expire on July 11, 2012.

On June 26, 2012, all of the Carter Plaintiffs whose claims had been severed filed a motion for extension of time within which to file their separate lawsuits in a manner consistent with the Court's instructions. [Id., Doc. 33]. On June 27, 2012, the Court entered an Order allowing the severed plaintiffs a 30-day extension of the deadlines set forth in the Court's prior Order. [Id., Doc. 34]. Accordingly, the severed Plaintiffs had until August 10, 2012 to file their separate pleading. The Plaintiffs did, in fact, file their own Complaint and paid the filing fee by that date. [See Doc. 1]. The Defendant's argument that the Plaintiffs' re-filed Complaint was untimely, therefore, is without merit.

**B.     Whether the Plaintiffs Have Standing to Assert Their Claims**

Defendant Berg argues that both Plaintiffs lack standing to bring this action, as they are no longer the owners of Lot 111, the property having been transferred to the 111A Grey Rock Trust by a deed recorded on October 26, 2006. [See Deed, Doc. 19-3]. Accordingly, the Defendant

argues, the Plaintiffs are not the real parties in interest and do not have the legal right to enforce the claims alleged. Defendant Berg contends that because this action concerns the lack of improvements made to the real property, the 111A Greyrock Trust, as the current owner of the property, should be substituted as the Plaintiff herein and Plaintiffs Burke and Micoli should be dismissed. [Doc. 19-1].

The Defendant's argument borders on the absurd and treads dangerously close to the frivolous. The Plaintiffs have alleged that Berg and others defrauded them by inducing Burke to first purchase the lot and then transfer the lot to a trust controlled by Berg. If Defendant's argument were correct, any victim who was fraudulently deprived of property would be precluded from asserting a claim because the victim was no longer the owner of the property at issue.

The transfer of the subject property to the 111A Greyrock Trust does not vitiate the Plaintiffs' standing to assert claims for fraud and negligent misrepresentation against Defendant Berg arising out of the purchase and subsequent sale of that property. The Defendant's argument that the Plaintiffs lack standing to assert claims against him is therefore rejected, and his motion to substitute the 111A Greyrock Trust as the "real party in interest" is denied.

## C. Plaintiff Micoli's Claims

Defendant Berg further argues that all claims asserted by Plaintiff Micoli should be dismissed, as the Complaint does not contain any allegations of wrongdoing on the part of Defendant Berg against her. [Id.].

The Plaintiffs counter that Plaintiff Micoli's claims are entirely proper, as Burke and Micoli were married at the time of the purchase of the land underlying this action; that they are both financially responsible for the purchase of the real property; and that they suffered the damages from the actions of Defendant Berg together. The Plaintiffs further argue that the Court can draw a "reasonable inference" that the statements made to Plaintiff Burke were relayed to Plaintiff Micoli as they contemplated investing with Defendant Berg. [Doc. 23].

The Plaintiffs' arguments in this regard would be more persuasive if any of the aforementioned facts were actually pled in the Complaint. As it stands, however, the Complaint is completely devoid of any such factual allegations to support Plaintiff Micoli's claims against Defendant Berg. While the Complaint generally alleges that the Plaintiffs purchased the lot, the warranty deed memorializing that transaction shows Plaintiff Burke as the sole grantor. The Complaint contains no allegations regarding the Plaintiffs' marital status or Micoli's involvement in the purchase of the

property in any way. In order to assert an ILSA claim, a plaintiff must have purchased the property. See 15 U.S.C. § 1709. Accordingly, the Court concludes that Micoli has failed to state a claim as a "purchaser" under the ILSA, and her ILSA claim must be dismissed.

The only item in the record which appears to provide any connection between this matter and Plaintiff Micoli is the second warranty deed, which was filed by Defendant Berg in support of his Motion to Dismiss, conveying Lot 111 to the 111A Greyrock Trust. This deed shows the grantors of the property to be both Plaintiffs Burke and Micoli. [Doc. 19-3]. Construing the allegations of the Complaint generously in the light most favorable to the Plaintiffs, and in light of Micoli's apparent ownership interest in the property the Court concludes that Plaintiff Micoli should not be dismissed from this action entirely. The Plaintiffs allege that as part of Defendant Berg's fraudulent scheme, they were induced to convey the property to Defendant Berg. Because Micoli was part of this conveyance, the Court will allow her claims to proceed.

**D. Whether Plaintiffs' Claims are Barred under the Applicable Statute of Limitations**

Next, Defendant Berg argues that the Plaintiffs' claims are barred by the applicable statute of limitations.

The Court recently addressed a similar argument in another case involving lot purchases in Grey Rock, <u>Barnard v. SunTrust Bank</u>, Civil Case No. 1:11cv289 (W.D.N.C.), and that Order is incorporated herein. Accordingly, for the reasons set forth in the <u>Barnard</u> Order, Defendant Berg's argument that the Plaintiffs' claims are barred by the applicable statute of limitations is rejected.

**E. Whether Plaintiffs' Claims for Fraud and Negligent Misrepresentation Fail as a Matter of Law**

Defendant Berg argues that the Plaintiffs' claims for fraud and negligent misrepresentation fail as a matter of law because the Plaintiffs have failed to allege justifiable reliance. Contrary to the Defendant's arguments, the Plaintiffs have asserted adequate allegations to establish justifiable reliance. The Plaintiffs contend that they could not reasonably have discovered the truth about Berg's misrepresentations [<u>see</u> Complaint, Doc. 1 at ¶101], and it is not clear on the face of the Complaint that the Plaintiffs' reliance on Berg's statements was not reasonable or justifiable. Indeed, whether the Plaintiffs were justified in relying upon Berg's statements is a fact-intensive inquiry which will depend on the development of evidence in the record and in particular the parties' testimony. In short, this is a matter best resolved on a motion for summary judgment or at trial,

not on a motion to dismiss. Accordingly, Defendant Berg's argument that the Plaintiffs' claims for fraud and negligent misrepresentation must be dismissed due to a lack of justifiable reliance must be denied.

F.  **Whether Plaintiff Burke Has Stated a Plausible ILSA Claim**

Defendant Berg argues that the Plaintiff's ILSA claim should be dismissed because Berg did nothing more than convey the subject property to the Plaintiff and therefore Berg is neither a "developer" nor an "agent" within the meaning of the Act.

The ILSA "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778 (1976). "The Act also requires sellers to inform buyers, prior to purchase, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing a piece of real property." Burns v. Duplin Land Dev., Inc., 621 F.Supp.2d 292, 301 (E.D.N.C. 2009).

An individual who purchases a lot may bring a civil action under the ILSA against a "developer or agent" who violates Section 1703(a). 15 U.S.C. § 1709; see also Burns, 621 F.Supp.2d at 301. A "developer" is defined as "any person who, directly or indirectly, sells or leases, or offers

to sell or lease, or advertises for sale or lease any lots in a subdivision. . . ." 15 U.S.C. § 1701(5).  An "agent" is defined as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision. . . ." 15 U.S.C. § 1701(6).

Here, the Plaintiff has made plausible allegations to support a finding that Berg's marketing and sales activities at Grey Rock went far beyond simply conveying the lot.  The Plaintiff has alleged that Berg was actively involved in the sale of lots; that he attended investment club meetings in order to solicit purchasers of Grey Rock lots; that he represented to the Plaintiff that he (Berg) had a great relationship with the Developer; that he assured the Plaintiff that he would handle the resale of Lot 111 personally; that he provided the Plaintiff with a work sheet that itemized each "discount" that he was receiving on the purchase of Lot 111; and that Berg showed Plaintiff Burke the drawings/sketches of the amenities at Grey Rock during a presentation at Defendant Berg's home.  These allegations are sufficient to support a plausible claim that Berg was a "developer" within the meaning of the ILSA.  Berg's motion to dismiss the Plaintiff's ILSA claim is therefore denied.

### G. Joinder of Necessary Party

Finally, Defendant Berg argues that if this action is not dismissed under Rule 12(b)(6), the 111A Greyrock Trust as the current owner of the property should be added as a proper and necessary party to this action. [Doc. 19-1].

Rule 19 of the Federal Rules of Civil Procedure provides that a person who is subject to service of process and whose joinder will not deprive the Court of subject matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Here, the Defendant fails to advance any argument that any of the aforementioned requirements are met in this case. Accordingly, the Defendant's request for joinder of the 111A Greyrock Trust as a party is denied.

# O R D E R

**IT IS, THEREFORE ORDERED** that the Motion to Dismiss [Doc. 19] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) With respect to Plaintiff Micoli's claim under the ILSA, Defendant Berg's Motion to Dismiss [Doc. 19] is **GRANTED** and this claim is **DISMISSED;**

(2) In all other respects, the Motion to Dismiss [Doc. 19] is **DENIED**.

**IT IS SO ORDERED.**   Signed: September 30, 2013

Martin Reidinger
United States District Judge